### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES COMA, by and through
his legal guardian, RICK COMA,

     Plaintiff,

     v.

UNITED STATES OF AMERICA,

     Defendant.

CIVIL ACTION NO. 4:19-cv-00286

(WILSON, J.)
(SAPORITO, M.J.)

### <u>MEMORANDUM</u>

This matter is before the court on the defendant's motion to compel

discovery (Doc. 82).

## I.   *Statement of Facts*

The plaintiff, Charles Coma, is a former federal prisoner. He is no

longer incarcerated. He has alleged that he has suffered serious injuries

as a result of a February 26, 2016, assault upon him by another prisoner,

his cellmate, Timothy McCallister, including a permanent brain injury

and cognitive impairment. In his amended complaint, Coma alleges that

the assault by McCallister was with the permission and encouragement

of BOP staff members. (Doc. 9 ¶ 128). Count III of the amended complaint

alleges that BOP staff conspired with one another and McCallister to

assault Coma. (*Id.* ¶¶ 212-18). Count IV alleges that BOP staff aided and abetted McAllister in assaulting Coma. (*Id.* ¶¶ 219-25).

He brought this action initially through his legal guardian at the time, Donna Coma, and upon her death, he has continued the litigation through his substituted legal guardian, Rick Coma. The incident underlying this action occurred in the SMU at USP Lewisburg, a high-security federal penitentiary. All prisoner movement in the SMU is controlled by correctional staff and prisoners remain in their cells most of the time. The doors to cells in the SMU remain closed and locked at all times except when a prisoner is being escorted into or out of the cell by prison staff.

In its motion to compel, the defendant seeks an order compelling the plaintiff to produce correspondence between his counsel and a paralegal on the one hand, and his assailant, McCallister, on the other hand. In its brief in support of the motion to compel, the defendant argues that McCallister is the sole factual source for the plaintiff's allegations that the BOP conspired to have Coma assaulted. When the plaintiff refused to produce this correspondence in discovery, characterizing it as protected work product, this motion followed.

The plaintiff served his original privilege log on April 1, 2022, asserting work-product protection with respect to all the documents at issue in this motion. (Doc. 86-5.) On May 6, 2022, he served an amended privilege log, maintaining the same work-product objection with respect to production of most of the same documents, but changing the basis for withholding for some of the documents: the basis of withholding for several items was changed from a work-product objection to a relevance objection, based on a representation that these documents reflected correspondence entirely unrelated to this litigation. (Doc. 86-6.)

The defendant seeks a ruling on the plaintiff's objections and an order directing the plaintiff to produce may of the withheld documents identified on the plaintiff's amended privilege log. The documents currently at issue fall into several distinct categories: (A) Letters authored by plaintiff's counsel, Jennifer Tobin, and addressed to McAllister (documents no. 2–4, 6–8, 10–16, 18–22, 24, 26); (B) letters authored by McAllister and addressed to Tobin (documents no. 27–29, 31–36); (C) letters authored by the paralegal, David Sprout, and addressed to McAllister, concerning this litigation (documents no. 37, 38, 40, 41, 45–47, 51, 53); (D) letters authored by McAllister and addressed

to Sprout concerning this litigation (documents no. 54, 57, 60, 61, 65, 85); and (E) letters between Sprout and McAllister concerning matters entirely unrelated to this litigation (documents no. 30, 39, 42–44, 48–50, 52, 55, 56, 58, 59, 62–64, 86). The defendant contends that these communications by counsel and a paralegal with McAllister, a non-party witness, are not entitled to work product protection in the first instance. In the alternative, the defendant contends that any fact work product is discoverable because it has a substantial need for these materials and cannot otherwise obtain the substantial equivalent of such materials without undue hardship. Finally, the defendant contends that the plaintiff has waived any work-product protection with respect to this correspondence by relying upon McAllister's responses in composing the factual allegations of the amended complaint.

The parties have briefed the motion and the court has conducted an *in camera* inspection of the Category "E" documents (unrelated correspondence between Sprout and McAllister) identified above. For the reasons set forth herein, the motion will be denied.

## II.   *Legal Standard*

"Unlike the attorney-client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in the federal rules." *U.S. Fid. & Guar. Co. v. Barron Indus., Inc.*, 809 F. Supp. 355, 364 n.10 (M.D. Pa. 1992) (citing *United Coal Cos.*, 839 F.2d at 966). "The work product doctrine is governed by a uniform federal standard set forth in Fed. R. Civ. P. 26(b)(3) and 'shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.'" *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 661–62 (3d Cir. 2003).

> The purpose of the work-product doctrine differs from that of the attorney-client privilege. . . . [T]he attorney-client privilege promotes the attorney-client relationship, and, indirectly, the functioning of our legal system, by protecting the confidentiality of communications between clients and their attorneys. In contrast, the work-product doctrine promotes the adversary system directly by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation. Protecting attorneys' work product promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients.

*Westinghouse*, 951 F.2d at 1427–28. Moreover,

> the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One

> of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.

*United States v. Nobles*, 422 U.S. 225, 238–39 (1975) (footnote omitted).

Thus, under Rule 26(b)(3), the work-product doctrine shields from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). "In distinguishing between proceedings which qualify as litigation and those that do not, the adversarial nature of the proceeding is characteristic of litigation." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 268 F.R.D. 114, 117 (D.D.C. 2010). Although a common hallmark of litigation is whether "the parties have the right to cross-examine witnesses or to subject an opposing party's presentation of proof to equivalent disputation," *see United States v. Am. Tel. & Tel. Co.*, 86 F.R.D. 603, 627 (D.D.C. 1980),

> [t]he proper focus should be whether the proceeding required the lawyer to function as lawyers usually do at a trial so that the proceeding can be classified as

"litigation." This properly segregates the transactional work of lawyers who draft contracts or provide legal advice from lawyers who have to represent clients before tribunals that have the power to adjudicate their clients' rights, whatever the nature of the proceeding. If the tribunal has the power to adjudicate those rights and demands that the party before it either make a certain showing or disprove a particular allegation, the process is adversarial by its very nature and surely qualifies as litigation.

*Rail Freight Fuel Surcharge*, 268 F.R.D. at 118; *see also Restatement (3d) Lawyers* § 87 cmt. H ("In general, a proceeding is adversarial when evidence or legal argument is presented by parties contending against each other with respect to legally significant factual issues.").

Rule 26(b)(3) establishes two categories of protection: fact work product and opinion work product. "Fact work product is discoverable only upon a showing [of] 'substantial need' and by demonstrating that one cannot otherwise obtain the 'substantial equivalent' of such materials without 'undue hardship.'" *In re Linerboard Antitrust Litig.*, 237 F.R.D. 373, 381 (E.D. Pa. 2006) (quoting Fed. R. Civ. P. 26(b)(3)). Opinion work product, "which consists of 'mental impressions, conclusions, opinions, or legal theories of an attorney,' is afforded almost absolute protection" and it "is discoverable 'only upon a showing of rare

and exceptional circumstances.'" *Linerboard*, 237 F.R.D. at 381 (quoting *Cendant*, 343 F.3d at 663).

Waiver of the work-product doctrine also works differently than waiver of the attorney-client privilege. *See In re Grand Jury (Impounded)*, 138 F.3d 978, 981 (3d Cir. 1998) ("The attorney work product privilege, however, is not absolute, and it may be waived."). Unlike the attorney-client privilege, where disclosure to a third party waives the privilege unless the disclosure is necessary to further the legal representation, "the work-product doctrine serves instead to protect an attorney's work product from falling into the hands of an adversary," and thus "disclosure must enable an adversary to gain access to the information" for it to constitute waiver of work-product protection. *Westinghouse*, 951 F.2d at 1428; *see also United States v. Frederick*, 182 F.3d 496, 500 (7th Cir. 1999) ("The work-product privilege is intended to prevent a litigant from taking a free ride on the research and thinking of his opponent's lawyer and to avoid the resulting deterrent to a lawyer's committing his thoughts to paper."); *Miller v. Haulmark Transp. Sys.*, 104 F.R.D. 442, 445–46 (E.D. Pa. 1984).

Finally, we note that,

> [o]rdinarily, the work-product doctrine should only be applied after it is decided that attorney-client privilege does not apply. This is because the work-product doctrine applies only to "documents and tangible things otherwise discoverable." If the attorney-client privilege applies to a particular item, it is absolutely undiscoverable and the work-product rule does not apply.

*Robinson v. Texas Automobile Dealers Ass'n*, 214 F.R.D. 432, 442 (E.D. Tex. 2003) (citations omitted) (quoting Fed. R. Civ. P. 26(b)(3)), *vacated in part on other grounds by* 2013 WL 21911333 (5th Cir. July 25, 2003) (mem.).

## III.   Discussion

The plaintiff has withheld the documents at issue on two different bases—relevance and work-product protection.[1]

---

[1] We note that the plaintiff has also asserted attorney-client privilege with respect to two of the documents at issue. Documents no. 15 and no. 33 are characterized as letters between Tobin and McAllister that partly concern protected work product—counsel's investigation and evaluation of the case—and partly concern a request for legal advice by McAllister unrelated to this action. Based on the dates and descriptions of these letters, it would appear that one of McAllister's letters responding to Tobin's questions included an unrelated request for legal advice, and Tobin's next letter included a response to that request. The defendants do not challenge the assertion of attorney-client privilege, which is manifestly appropriate based on these descriptions, *see In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 124 n. 1 (3d Cir. 1986), but request that the correspondence be produced with the privileged material redacted. *See generally Doe v. Luzerne Cty.*, Civil Action No. 3:04-1637, 2008 WL 2518131, at *1 (M.D. Pa. June 19, 2008)

## A.    Unrelated Correspondence Not Relevant or Responsive

The plaintiff has withheld several letters between Sprout and McAllister concerning matters entirely unrelated to this litigation (documents no. 30, 39, 42–44, 48–50, 52, 55, 56, 58, 59, 62–64, 86). Although the paralegal, Sprout, provided assistance to Tobin in this case, he is an employee of the Pennsylvania Innocence Project ("PIP"), a nonprofit organization that provides legal assistance to prisoners. In opposition to the motion to compel, the plaintiff has submitted declarations by Tobin, Sprout, and the executive director of PIP, in which they have explained that the Category "E" documents were produced or received by Sprout in his role as a paralegal for PIP, rather than on behalf of the plaintiff or plaintiff's counsel, and that these documents were inadvertently included in the plaintiff's original privilege log. Only after the original privilege log had been served did Tobin recognize that many of the letters originally identified as protected work product were actually entirely unrelated to this case. The defendant, however, remains

---

("If any document contains both fact and opinion work product, the adversary party is entitled to discovery of the facts as long as the opinions, mental impressions, etc. are properly redacted.").

suspicious of this *post hoc* amendment to the privilege log, and it has continued to press the matter.

We have reviewed *in camera* all of the Category "E" documents—correspondence between Sprout and McCallister purportedly unrelated to this litigation. Based on this review, we agree that none of these items are related to this case. These documents are neither relevant to the claims or defenses at issue in this litigation nor responsive to the defendant's requests for production. Accordingly, the plaintiff's relevance objections will be sustained with respect to documents no. 30, 39, 42–44, 48–50, 52, 55, 56, 58, 59, 62–64, 86, and those documents will not be produced.

### B.   *Remaining Correspondence Is Protected Work Product*

The remaining documents are comprised of correspondence authored by Tobin or Sprout and addressed to McAllister (Categories "A" and "C" respectively) and correspondence authored by McAllister and addressed to either Tobin or Sprout (Categories "B" and "D" respectively).

In its brief in support, the defendant concedes that, generally, correspondence authored by plaintiff's counsel or a paralegal may constitute protected work product. The defendant suggests that, under

the circumstances of this case, Tobin or Sprout is unlikely to have disclosed any fact work product *to* McAllister, and it disclaims seeking the disclosure of any opinion work product,[2] but the defendant's requested relief includes production of all of these Category "A" and "C" documents authored by counsel and the paralegal. Moreover, notwithstanding its disclaimer of any interest in production of opinion work product, the defendant has suggested in the margin of its opening brief that disclosure of any opinion work product to McAllister effected a waiver of any such work-product protection because McAllister and Coma do not share a common interest in this litigation.

But in the work-product context, the existence of a shared common interest is simply irrelevant; what matters is whether McAllister and Coma are litigation adversaries. *See Sys. Am., Inc. v. Tyagi*, Civil Action No. 97-42, 1997 WL 35386736, at *4–*5 (D. Del. Feb. 20, 1997). Despite the violent incident that transpired while incarcerated together, there is

---

[2] In the attorney-witness communications context, any attempt by an opposing party to discover specific questions counsel asked a witness, or even general areas of inquiry to which counsel directed questions, is improper as tending to disclose the mental impressions, conclusions, opinions, or legal theories of the attorney. *See Barrett Indus. Trucks, Inc. v. Old Republic Ins. Co.*, 129 F.R.D. 515, 519 (N.D. Ill. 1990) (citing *Ford v. Philips Elec. Instruments Co.*, 82 F.R.D. 359, 360 (E.D. Pa. 1979)).

no indication in the record before us that they have been adversaries in litigation. Moreover, under controlling Third Circuit precedent, it is well-established that merely disclosing work product to a witness does not amount to waiver of work product protection. *See Bogosian v. Gulf Oil Corp.*, 738 F.2d 587, 593 (3d Cir. 1984); *Doe v. Luzerne Cty.*, Civil Action No. 3:04-1637, 2008 WL 2518131, at *3 (M.D. Pa. June 19, 2008).

It is undisputed that the correspondence authored by McAllister (Categories "B" and "D") comprises factual material only. The defendant argues, however, that this correspondence is not protected fact work product because McAllister is not a representative or agent of the plaintiff or his attorney. *See generally Grand Jury (Impounded)*, 138 F.3d at 981 ("[Work-product] protection also can extend to materials prepared by an attorney's agent, if that agent acts at the attorney's direction in creating such documents.").

But we find the medium of this dialogue between counsel or a paralegal representing the plaintiff and a potential witness—written correspondence exchanged through the postal mail—does little to distinguish this from the more typical oral interview of a non-incarcerated third-party witness by an attorney or investigator for a

plaintiff.[3] Like a shorthand or stenographic recording of a witness statement or interview, this "interview" conducted by postal mail was produced by counsel and a paralegal for litigation purposes, and the participation of this incarcerated witness in an "interview" conducted by exchange of written correspondence is comparable to participation by a witness in a recorded oral interview or the creation of a written witness statement. *See Gerber v. Down E. Cmty. Hosp.*, 266 F.R.D. 29, 33 (D. Me. 2010) (finding email correspondence between counsel and potential witnesses was protected work product). As the *Gerber* court observed, the fact that the witness authors a portion of the chain of written correspondence does not undermine this protection:

> As for authorship, [a written] correspondence chain is still produced by counsel's skillful or tactical questioning despite the fact that the witness responds in writing rather than in words. I am unaware of any precedent holding that a witness statement is not work-product whenever it is the witness who puts pen to paper (or finger to keyboard) rather than counsel or counsel's agent. The *Hickman* decision . . . includes

---

[3] We find it particularly appropriate to characterize this correspondence as a "dialogue" or "interview" under the circumstances presented in this case. Based on the plaintiff's privilege log, it is clear that the correspondence between Tobin or Sprout and McAllister, comprised of 45 letters and punctuated by five in-person or telephone interviews, involved an ongoing exchange of questions and answers, initiated by counsel in the first instance.

> correspondence among its list of protected papers. A
> party should not be disadvantaged with respect to trial
> preparation simply because counsel used a tangible
> medium of communication rather than an oral
> interview. I am unaware of any basis in the law for
> denying work product protection to witness statements
> simply because the witness plays a role in writing out
> (or signing) the statement.

*Id.* (citation omitted); *accord Grano v. Sodexo Mgmt., Inc.*, Case No.
18cv1818-TWR(BLM), 2021 WL 4751181, at *5 (S.D. Cal. Oct. 12, 2021)
(citing *Gerber*); *Raymond James Fin. Servs., Inc. v. Arijos*, Case No. 19-
81692-CIV-Ruiz/Reinhart, 2020 WL 1492993, at *4 (S.D. Fla. Mar. 27,
2020) (same); *Booth v. Galveston Cty.*, Civil Action No. 3:18-CV-00104,
2018 WL 5276265, at *3–*4 (S.D. Tex. Oct. 10, 2018) (same); *United
States v. Dico, Inc.*, No. 4:10-cv-00503, 2017 WL 9049852, at *10 (S.D.
Iowa Mar. 27, 2017) (same); *United States ex rel. Univ. Loft Co. v. AGS
Enters., Inc.*, Civil No. SA-14-CA-528-OLG, 2016 WL 9462335, at *8 n.75
(W.D. Tex. June 29, 2016) (same); *see also Hickman v. Taylor*, 329 U.S.
495, 511 (1947) (stating that work product is reflected in "interviews,
statements, memoranda, *correspondence*, briefs, mental impressions,
personal beliefs, and countless other tangible and intangible ways")
(emphasis added). We find the reasoning of *Gerber* and its progeny
persuasive and highly apposite to situation presented in this case.

15

In its reply brief, the defendant cites several cases in contraposition. Some are simply inapposite. For example, two of the cases involved questionnaires circulated by class action plaintiffs' attorneys to potential class members; the questions themselves—the core opinion work product ultimately at issue—had already been disclosed or produced to the opposing party, leaving only the purely factual responses by potential class members themselves at issue. *See Morisky v. Pub. Serv. Elec. & Gas Co.*, 191 F.R.D. 419, 425 (D.N.J. 2000); *Dobbs v. Lamonts Apparel, Inc.*, 155 F.R.D. 650, 651 (D. Ala. 1994). A third case cited by the defendant ruled that *unsolicited* correspondence from a non-party potential witness, which did not respond to any inquiry by plaintiff's counsel and thus clearly did not implicate the attorney's mental impressions or legal theories, was not protected work product. *See Carpenter v. Churchville Green Homeowner's Ass'n*, No. 09–CV–6552T, 2011 WL 4711961, at *10 (W.D.N.Y. Sept. 29, 2011). The remaining three cases are concededly on point, *see Lakehal-Ayat v. St. John Fisher Coll.*, No. 6:18-CV-06916-CJS-MJR, 2021 WL 6775441, at *2 (W.D.N.Y. Oct. 15, 2021); *Samad Bros., Inc. v. Bokara Rug Co.*, No. 09 Civ. 5843 (JFK), 2010 WL 5095356, at *3 (S.D.N.Y. Dec. 13, 2010); *Ricoh Co. v. Aeroflex*

*Inc.*, 219 F.R.D. 66, 70 (S.D.N.Y. 2003), but we find their reasoning less persuasive than the substance and weight of authority represented by *Gerber* and its progeny, particularly in light of the express inclusion of "correspondence" among the forms of protected work product expressly recognized by the Supreme Court of the United States. *See Hickman*, 329 U.S. at 511; *Gerber*, 266 F.R.D. at 33; *see also Grano*, 2021 WL 4751181, at *5; *Arijos*, 2020 WL 1492993, at *4; *Booth*, 2018 WL 5276265, at *3–*4; *Dico*, 2017 WL 9049852, at *10; *Univ. Loft Co.*, 2016 WL 9462335, at *8 n.75.

The defendant also argues that the plaintiff waived any work product protection by using the facts set forth in this correspondence with McAllister as the factual basis of his complaint. But merely relying on work-product materials in composing the factual allegations of a complaint is not the sort of disclosure that will waive work-product protection; a party must rely on the work-product as *evidence* or in support of testimony. *See Rubalcava v. City of San Jose*, Case No. 20-cv-04191-BLF (VKD), 2022 WL 484988, at *5 (N.D. Cal. Feb. 16, 2022) (merely filing a complaint and identifying witnesses as required by the Federal Rules of Civil Procedure is not the kind of disclosure that can

support a waiver of work product protection for the documents on which counsel relied in preparing those materials); *nCAP Licensing, LLC v. Apple Inc.*, Case No. 2:17-cv-00905-RJS-BCW, 2018 WL 10509455, at *2 (D. Utah Dec. 7, 2018) (simply relying on the work-product materials to file a lawsuit is not enough to automatically waive work-product protection—a party must rely on the work-product as evidence for protection to be waived). "Pleadings and mandatory initial disclosures are not testimonial and serve functions—i.e., notice and discovery—that are very different from the function served by testimony." *Rubalcava*, 2022 WL 484988, at *5; *see also nCAP Licensing*, 2018 WL 10509455, at *2. To treat it as a waiver of work-product protection under these circumstances "would mean that any time a defendant challenges the accuracy of a complaint's allegations, and a plaintiff responds to that challenge by defending the good faith basis for making the claims, the plaintiff will be deemed to have waived work product." *Rubalcava*, 2022 WL 484988, at *5. Should the plaintiff rely on these materials as evidence at a later stage of these proceedings, it may be appropriate to revisit the discoverability of these documents. *See nCAP Licensing*, 2018 WL 10509455, at *2.

18

Accordingly, we find the Category "A," "B," "C," and "D" documents are protected work product, and that protection has not been waived by the plaintiff.

### C.    No Showing of Substantial Need or Undue Hardship

Our inquiry does not end there. As we have noted, to the extent the correspondence constitutes fact work product only—i.e., correspondence authored by McAllister (the Category "B" and "D" documents)[4]—it may still be discoverable if the defendant is able to establish a substantial need for the documents and that it cannot otherwise obtain the substantial equivalent of such materials without undue hardship. *See* Fed. R. Civ. P. 26(b)(3)(A)(ii); *Linerboard Antitrust Litig.*, 237 F.R.D. at 381.

The defendant argues that it has a substantial need for the correspondence authored by McAllister because he is "central to this lawsuit," apparently because he is the plaintiff's only fact witness in support of his claims of conspiracy and aiding and abetting, and discovery of the statements he made to plaintiff's counsel would permit them to

---

[4] We find no basis to conclude that the correspondence authored by Tobin or Sprout (the Category "A" and "C" documents) constitutes or contains fact work product.

better corroborate or impeach any deposition or trial testimony he might later give. But such a need for corroborative or impeachment evidence does not constitute a "substantial need" sufficient to justify vitiation of work-product protection. *See Director, Office of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1308 (D.C. Cir. 1997); *In re Grand Jury Investigation*, 599 F.2d 1224, 1233 (3d Cir. 1979); *Randleman v. Fid. Nat'l Title Ins. Co.*, 251 F.R.D. 281, 286 (N.D. Ohio 2008); *McPeek v. Ashcroft*, 202 F.R.D. 332, 339 (D.D.C. 2001) ("[I]f the desire to impeach a witness with prior inconsistent statements is a sufficient showing of substantial need, the work product privilege would cease to exist; there is not a lawyer born who would not like to see opposing counsel's files in order to search for inconsistencies in opposing witnesses' potential testimony.").

The defendant also argues that it cannot otherwise obtain the substantial equivalent of the factual matter found in the correspondence authored by McAllister without undue hardship. There is nothing in the record before us to indicate that McAllister is not available for deposition, a commonplace and well-established alternative discovery method clearly available to obtain the substantial equivalent of the fact work

product sought by the defendant in the instant motion. *See United States ex rel. Lord v. NAPA Mgmt. Servs. Corp.*, Civil Action No. 3:13-2940, 2019 WL 5829535, at \*10 (M.D. Pa. Nov. 7, 2019); *N.J. Mfrs. Ins. Co. v. Brady*, Civil Action No. 3:15-CV-02236, 2017 WL 264457, at \*9 (M.D. Pa. Jan. 20, 2017); *Randleman*, 251 F.R.D. at 286; *Garvey v. Nat'l Grange Mut. Ins. Co.*, 167 F.R.D. 391, 394 (E.D. Pa. 1996).

The defendant has noted that, because he is a prison inmate, it cannot depose McAllister without first obtaining leave of court. *See generally* Fed. R. Civ. P. 30(a)(2)(B). As we advised the parties during a July 5, 2022, telephone conference, the court is amenable to granting a request for leave to depose McAllister as we find such a request to be reasonable under the circumstances presented in this case.

In its reply brief, the defendant has noted that deposing McAllister would require defense counsel to travel to Louisiana to take his deposition. While such travel may impose some burden, we do not find it *unduly* burdensome for government defense counsel to travel within the United States to depose a single witness characterized by the defendant itself as "central to this lawsuit." *See In re Aramark Sports & Entm't Servs., LLC*, 289 F.R.D. 662, 665 (D. Utah 2013). Moreover, we note that

the federal rules permit a deposition to be taken by telephone, videoconference, or other remote means if the parties so stipulate, or by motion and order. *See* Fed. R. Civ. P. 30(b)(4); *Almonacid v. Cessna Aircraft Co.*, No. 11-1224-MLB-KGG, 2012 WL 1059681, at \*1 (D. Kan. Mar. 28, 2012).

Accordingly, we find that the defendant has failed to establish a substantial need for the remaining documents at issue (the Category "A," "B", "C", and "D" documents) or that it cannot otherwise obtain the substantial equivalent of such materials without undue hardship.

## IV.   Conclusion

For the foregoing reasons, the plaintiff's relevance and work-product protection objections to production of the documents at issue (documents 2–4, 6–8, 10–16, 18–22, 24, 26–65, 85, 86) will be sustained, and the defendant's motion to compel (Doc. 82) will be denied. Because we find the motion to be substantially justified, the parties shall each bear their own costs.

An appropriate order follows.

Dated: August 9, 2022                  *s/Joseph F. Saporito, Jr.*
                                       JOSEPH F. SAPORITO, JR.
                                       United States Magistrate Judge